UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUMMER BROOKS, *individually and on behalf of all others similarly situated*,

    Plaintiff,

v.

PSCU, LLC, and LONE STAR CREDIT UNION,

    Defendants.
_____

Case No. 8:24-cv-2983-KKM-AAS

## ORDER

Summer Brooks sues PSCU, LLC, and Lone Star Credit Union under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and she seeks class certification. Compl. (Doc. 1). PSCU and Lone Star move to dismiss, for a more definite statement, and to strike Brooks's class allegations. PSCU MTD (Doc. 18); Lone Star MTD (Doc. 19). They also move jointly to bifurcate discovery. Joint Mot. to Bifurcate (Doc. 21). Brooks opposes all these motions. Resp. to Mot. to Bifurcate (Doc. 26); Resp. to MTDs (Doc. 30). For the reasons below, I deny the defendants' motions to dismiss and to strike Brooks's class allegations, but I grant their motions

for a more definite statement, to strike her demand for injunctive relief, and to bifurcate discovery.

I. BACKGROUND

A. Brooks Receives Unwanted Calls from Lone Star and PSCU

Brooks acquired a new cell phone number in mid-October 2024.[1] Compl. ¶¶ 24–25. Since then, she has received unwanted calls that form the basis for this action. *Id.* ¶ 26.

Brooks does not allege when the first call happened. *Id.* ¶ 27. Brooks answered the call and "told the [d]efendants that they were calling the wrong phone number." *Id.* The complaint does not say whether this call was a robocall. *See id.*

The next call came on October 25, 2024. *Id.* ¶ 29. Brook did not answer the phone, and the caller left a pre-recorded voicemail. *Id.* ¶¶ 29–31 ("Brooks believes this voicemail was pre-recorded because the voice sounds robotic, artificial, the pauses are unnatural, and the recording asks the recipient to press '1' to continue in English."). That voicemail, which purported to be from the Lone Star Credit Union

---

[1] At the motion-to-dismiss stage, I assume the allegations in the complaint to be true. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

2

fraud detection department, sought to advise a Rena Sharzer of possible fraudulent activity on her card:

> This is the fraud detection department for Lonestar credit union calling for Rena Sharzer[]. We need to verify some recent activity on your card ending . . . 7 0 8 0[.] In order to prevent possible difficulties using your card it is important that you call us back at your earliest convenience toll-free at [phone number]. Verify this activity[.] Please reference case number 3 5 7 8 1[.] [R]eturning our call give me a call us back [24] hours a day seven days a week.[2]

*Id.* ¶¶ 30, 32.

A live agent called Brooks on November 10, 2024, on behalf of Lone Star, using a phone number affiliated with PSCU. *Id.* ¶¶ 33, 35–36. This message was also for Sharzer and related to a card security matter:

> Hello this message is for Rena Sharzer[]. My name is Jackie[]. I'm calling on behalf of lone star credit Union to do a security check in reference to your visa debit card[]. Case number is 3 5 7 8 Twin your uninterrupted service on your account please contact us at [phone number]. [I]n reference case number 3 5 7 8 and any agent can assist you. It is important to contact us as soon as possible at [phone number]. And reference case ID number 3 5 7 8 we look forward to speaking with you soon thank you . . ."

*Id.* ¶ 34. Brooks does not know a Rena Sharzer, has never gone by the name "Rena Sharzer or anything similar," and had never given either Lone Star or PSCU

---

[2] The voicemail's text is somewhat disjointed, as it appears to have been automatically transcribed by a cellphone's voicemail application. *See* Compl. ¶ 30.

permission to make pre-recorded calls to her. *Id.* ¶¶ 37–39. She alleges that these calls caused her "annoyance, nuisance," invaded her privacy, "occupied her phone memory, and disturbed the use and enjoyment of her phone." *Id.* ¶ 40.

### B. Brooks Files Suit and Seeks Class Certification

Brooks sues Lone Star and PSCU, alleging a single TCPA violation. *See id.* ¶¶ 48–51; *see also* 47 U.S.C. § 227(b)(1)(A)(iii). She also seeks certification of this class, subject to some exclusions not relevant here:

> **Pre-recorded No Consent Class**: All persons throughout the United States (1) to whom PSCU placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, but not assigned to a Lone Star Credit Union customer or accountholder, (3) in connection with which PSCU used an artificial or prerecorded voice message identifying Lone Star Credit Union, (4) from four years prior to the filing of this case through the date of class certification.

*Id.* ¶¶ 42–43.

Lone Star and PSCU move separately to dismiss the complaint or, in the alternative, for a more definite statement and to strike the class allegations. *See generally* PSCU MTD; Lone Star MTD. The defendants also seek to bifurcate discovery. Joint Mot. to Bifurcate.

## II. ANALYSIS

The defendants request that Brooks's case be dismissed because the fraud alert exemption to the TCPA bars her claim on her complaint's face. Absent that relief, they ask for a more definite statement and that Brooks's class allegations be stricken or class certification denied. Lone Star alone asks that I strike Brooks's demand for an injunction because Brooks lacks Article III standing. And if the class allegations survive, the defendants ask for bifurcated discovery.

The fraud alert exemption's applicability is not apparent from the complaint's face. But it is a narrow miss—only two minor factual issues are outstanding. Because of the narrowness of the parties' dispute about the exemption's applicability, bifurcated discovery is warranted. As discovery will be bifurcated, I decline to strike Brooks's class allegations at this stage. But she must replead her complaint to specify which phone call her TCPA count rests on, or else set out each phone call as a separate count. And I strike her demand for an injunction because she lacks Article III standing to seek that prospective relief.

### A. The Fraud Alert Exemption Does Not Warrant Dismissal

The defendants principally argue that this action should be dismissed because the fraud alert exemption to the TCPA bars Brooks's claim. PSCU MTD at 8–14;

Lone Star MTD at 11–13. Brooks responds, first, that the exemption is inapplicable because she did not give prior express consent to the defendants to call her, and, second, that in any event the elements of the exemption are not plain from the face of the complaint. Resp. to MTDs at 1–4. Brooks's first argument fails. But her second argument is on the mark.

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the

6

defendant is liable for the misconduct alleged." *Id.* When considering the motion, courts accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544.

Brooks's lone count arises under the TCPA. That statute, enacted to respond "to a torrent of vociferous consumer complaints about intrusive robocalls," prohibits "almost all robocalls to cell phones." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 614–15 (2020). The act provides a private right of action. *See* 47 U.S.C. § 227(b)(3). To state a TCPA claim under 47 U.S.C. § 227(b)(1)(A)(iii), Brooks must allege "(1) that the defendant called the plaintiff's cellular telephone; (2) using an [automatic telephone dialing system or an artificial or prerecorded voice]; (3) without the plaintiff's prior express consent." *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1195 (M.D. Fla. 2014); *see also* 47 C.F.R. § 64.1200(a)(1)(iii).

The TCPA empowers the Federal Communications Commission to create exemptions from its general provisions. *See* 47 U.S.C. § 227(b)(2). The FCC has created such an exemption for calls made by a "financial institution"[3] to inform a customer of "transactions and events that suggest a risk of fraud or identity theft," along with other time sensitive financial information. 47 C.F.R. § 64.1200(a)(9)(iii); *see also In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 8023–32 (2015); *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 35 F.C.C. Rcd. 15188, 15201–02 (2020) (reaffirming and codifying exemption). The parties call this the fraud alert exemption (or exclusion). *See, e.g.*, PSCU MTD at 3; Lone Star MTD at 12; Resp. to MTDs at 2. To qualify for the exemption, the call must meet eight requirements:

> (A) Voice calls and text messages must be sent only to the wireless telephone number provided by the customer of the financial institution;
>
> (B) Voice calls and text messages must state the name and contact information of the financial institution (for voice calls, these disclosures must be made at the beginning of the call);

---

[3] The FCC incorporated the definition of "financial institution" from the Bank Holding Company Act of 1956: "The term 'financial institution' means any institution the business of which is engaging in financial activities as described in [12 U.S.C. § 1843(k)]." 15 U.S.C. § 6809(3)(A). In turn, 12 U.S.C. § 1843(k)(1)(A) explains that financial activity is any activity that the Board of Governors of the Federal Reserve System "determines (by regulation or order) . . . to be financial in nature." No party disputes that, per the complaint, Lone Star is a financial institution and that PSCU acted on its behalf. *See* PSCU MTD at 11; Lone Star MTD at 11; *see also* Compl. ¶¶ 15, 18–19. *See generally* Resp. to MTDs.

8

(C) Voice calls and text messages are strictly limited to those for the following purposes: transactions and events that suggest a risk of fraud or identity theft; possible breaches of the security of customers' personal information; steps consumers can take to prevent or remedy harm caused by data security breaches; and actions needed to arrange for receipt of pending money transfers;

(D) Voice calls and text messages must not include any telemarketing, cross-marketing, solicitation, debt collection, or advertising content;

(E) Voice calls and text messages must be concise, generally one minute or less in length for voice calls (unless more time is needed to obtain customer responses or answer customer questions) or 160 characters or less in length for text messages;

(F) A financial institution may initiate no more than three messages (whether by voice call or text message) per event over a three-day period for an affected account;

(G) A financial institution must offer recipients within each message an easy means to opt out of future such messages; voice calls that could be answered by a live person must include an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the call recipient to make an opt-out request prior to terminating the call; voice calls that could be answered by an answering machine or voice mail service must include a toll-free number that the consumer can call to opt out of future calls; text messages must inform recipients of the ability to opt out by replying "STOP," which will be the exclusive means by which consumers may opt out of such messages; and,

(H) A financial institution must honor opt-out requests immediately.

47 C.F.R. § 64.1200(a)(9)(iii).

Brooks first argues that the fraud alert exemption does not apply because it requires prior express consent, something the complaint alleges that Brooks did not give. Resp. to MTDs at 2 (citing Compl. ¶¶ 25–28, 37). In support, she relies on the

9

Eleventh Circuit's recent decision in *Insurance Marketing Coalition, Ltd. v. FCC*, 127 F.4th 303 (11th Cir. 2025); *see* Resp. to MTDs at 2. In that case, the panel observed in a footnote that "[f]or other robocalls—such as informational calls about bank account balance[s], credit card fraud alert[s], package deliver[ies], and school closing[s]"—only "prior express consent" is required (as opposed to prior express written consent). *Ins. Mktg. Coal.*, 127 F.4th at 309 n.5 (all but first alteration in the original) (quoting *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1838 (2012)). Brooks says that, because the Eleventh Circuit held that the fraud alert exemption requires prior express consent, the exemption cannot apply here. Resp. to MTDs at 2.

That is not the best reading of *Insurance Marketing Coalition*. The context shows the Eleventh Circuit was not interpreting the fraud alert exemption. The portion of the opinion Brooks relies on quotes from the FCC's 2012 order requiring "prior express written consent for all telephone calls using an automatic telephone dialing system or a prerecorded voice to deliver a telemarketing message to wireless numbers and residential lines." 27 F.C.C. Rcd. at 1838. That quotation makes sense, as *Insurance Marketing Coalition* was concerned with a 2023 FCC order likewise interpreting the TCPA's prior express consent requirement. *See* 127 F.4th at 316–17.

But the FCC did not promulgate the fraud alert exemption until 2015, three years after the 2012 order that the *Insurance Marketing Coalition* court quoted, and the FCC did not codify the exemption until 2021. *See* 30 F.C.C. Rcd. at 8023–32; 35 F.C.C. Rcd. at 15201–02; *see also* 47 C.F.R. § 64.1200 (eff. Feb. 12, 2021, to Mar. 28, 2021) (first reflecting a codified fraud alert exemption). Nothing in *Insurance Marketing Coalition* suggests that the Eleventh Circuit was doing anything more than recounting the history of the FCC's interpretation of the TCPA's prior express consent language. Brooks thus fails to show that *Insurance Market Coalition* reads the fraud alert exemption as it exists today to incorporate a prior express consent requirement. More, even if it did, that statement would be dicta and thus nonbinding. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010). Brooks's first argument therefore fails.

In her second argument, Brooks's contends that the fraud alert exemption's applicability is not plain from her complaint's face, so dismissal is improper. Resp. to MTDs at 2–4. The defendants do not argue that Brooks must negate the exemption to state a claim, so it is best treated as an affirmative defense. "[A] complaint may be subject to dismissal for failure to state a claim—based on an affirmative defense— only when the affirmative defense appears on the face of the complaint." *Wells v.*

11

*Brown*, 58 F.4th 1347, 1350 (11th Cir. 2023) (en banc). Brooks argues that it is not clear from the face of her complaint (1) "that the call [was] not charged to the called person or counted against the called person's plan limits on minutes or texts" and (2) that the voicemail "include[d] a toll-free number that the consumer can call to opt out of future calls." Resp. to MTD at 3 (quoting 47 C.F.R. § 64.1200(a)(9), (a)(9)(iii)(G)).

Brooks is right. First, the parties do not appear to dispute that the complaint nowhere says that Brooks was not charged for the calls or that they did not count against her plan. The defendants argue instead that, because Brooks "fails to allege the calls were charged towards her telephone plan as a claimed injury, it follows that they were not." Joint Reply in Supp. of MTDs (Doc. 36) at 4. To accept this argument would be to draw an inference against Brooks, which is impermissible at the motion-to-dismiss stage. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016). Second, while the parties agree that the call at issue included a toll-free number, the complaint does not say whether a customer could opt out by calling the number, nor does Brooks allege that she called the number. Compl. ¶ 30. The complaint does not show that either of these requirements are met.

Considering the complaint alone, the fraud alert exemption does not require dismissal.

### B. Brooks Must Set Out Her Discrete TCPA Claims in Separate Counts or Specify Which Call Is the Factual Predicate for Her Claim

PSCU and Lone Star move under Rule 12(e) for an order requiring Brooks to plead in a separate count each of the three phone calls that she alleges in her complaint. PSCU MTD at 14–17; Lone Star MTD at 21–23. Brooks does not address this argument in her response. *See generally* Resp. to MTDs.

Under Federal Rule of Civil Procedure 12(e), a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed." A more definite statement is warranted if a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." *Id.* Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." And "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." *Id.*

13

I agree with the defendants that, in this case at least, it "would promote clarity" for the different phone call predicates to be set out in separate counts. FED. R. CIV. P. 10(b); *cf. Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) ("The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief."). The complaint plainly contains too little information about the first phone call to state a claim for relief under the TCPA based on that call. *See* Compl. ¶ 27; *see also Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1254 (M.D. Fla. 2012). The allegations about the other two phone calls are more detailed, but they are different in a key respect—the October 25 call was pre-recorded, Compl. ¶ 31, while a live agent made the November 10 call, *id.* ¶ 35; *see* 47 U.S.C. § 227(b)(1)(A) (prohibiting only calls made "using any automatic telephone dialing system or an artificial or prerecorded voice"). More definite pleading will likely allow the parties to narrow the scope of discovery and promote an expeditious resolution of this case.

Brooks must therefore replead her complaint, either pleading each phone call as a separate TCPA count, or else specifying which phone call her lone TCPA count is premised on.

### C. Good Cause Exists to Bifurcate Discovery

PSCU and Lone Star jointly move to bifurcate individual and class discovery on the theory that the fraud alert exemption will dispose of Brooks's claims. *See generally* Joint Mot. to Bifurcate. Brooks's sole basis for opposing the motion is that "because the banking fraud alert exemption does not apply in this case, bifurcating discovery would be inefficient for the Court and parties." Resp. to Mot. to Bifurcate at 3.

District courts have "broad discretion over the management of pre-trial activities, including discovery and scheduling." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001). Courts have discretion to bifurcate individual discovery and class discovery in class action cases, including those claiming TCPA violations. *See Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1570–71 (11th Cir. 1992); *Breines v. Pro Custom Solar LLC*, No. 3:19-CV-353-J-39PDB, 2019 WL 7423522, at *3 (M.D. Fla. Aug. 22, 2019) ("In the TCPA context, a motion to bifurcate individual and class discovery is not unheard of, with varied results largely based on educated guesses about future unknowns."); *Leschinsky v. Inter-Cont'l Hotels Corp.*, No. 8:15-CV-1470-T-

30MAP, 2015 WL 6150888, at *2 (M.D. Fla. Oct. 15, 2015). Courts consider a variety of factors in adjudicating a motion to bifurcate discovery, including

> [1] the likelihood of overlap of individual and class discovery, [2] the likelihood of ensuing discovery motions, [3] the likelihood of prejudice to the nonmovant, [4] evidence suggesting the claims of the named plaintiffs lack merit or the absence of such evidence, [5] the timing of the bifurcation motion, [6] whether the case can continue if the claims of the named plaintiffs are dismissed, [7] the interests of judicial economy, and [8] the "early practicable time" requirement of Rule 23(c)(1)(A).

*Breines*, 2019 WL 7423522, at *3.

While Brooks is right that the fraud alert exemption is not applicable from the complaint's face, bifurcation is appropriate because only two of the exception's elements are outstanding: (1) that Brooks was not charged for the call, and (2) that it was possible to opt out by calling the included toll-free number. *See supra* at 12–13. Because there is a significant possibility that the exemption bars Brooks's claim, any prejudice to Brooks from a brief delay will be minimal, and bifurcation may promote the expeditious resolution of this action, I conclude that bifurcation is appropriate. *See Leschinsky*, 2015 WL 6150888, at *2.

Accordingly, the parties must file a new case management report proposing dates for bifurcated discovery.

16

### D. It Is Unnecessary to Resolve the Merits of the Defendants' Motion to Strike Brooks's Class Allegations

The defendants move to strike Brooks's class allegations. PSCU MTD at 18–25; Lone Star MTD at 13–20. And PSCU moves to deny class certification. PSCU MTD at 18–25; see *Microsoft Corp. v. Baker*, 582 U.S. 23, 34 n.7 (2017) ("An order striking class allegations is 'functional[ly] equivalent' to an order denying class certification." (alteration in the original) (quoting *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 110–11 n.2 (4th Cir. 2013))). Because they succeeded on their motion to bifurcate discovery and "motion[s] to strike are generally disfavored," *Blanc v. Safetouch, Inc.*, No. 3:07 CV 1200 J 25TEM, 2008 WL 4059786, at *1 (M.D. Fla. Aug. 27, 2008), I decline to address the class issues at this time. The defendants may re-raise the issue of the adequacy of Brooks's class allegations after the resolution of the applicability of the fraud alert exemption to her claim, if appropriate.

### E. Brooks Lacks Article III Standing to Seek an Injunction

Last, Lone Star alone moves to strike Brooks's demand for injunctive relief because she does not have Article III standing to seek prospective relief. Lone Star MTD at 20–21. Brooks responds that because her requested injunction is a statutory

injunction, her demand is adequate. Resp. to MTDs at 7 (citing *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004)).

A requested injunction's statutory origin does not—and cannot—abrogate Article III's minimum requirements for standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." (quoting *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997))), *as revised* (May 24, 2016). To seek forward-looking injunctive relief, a plaintiff must show that future injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."); *see also United States v. City of Tampa*, 739 F. Supp. 3d 1055, 1063–64 (M.D. Fla. 2024).

Brooks does not point to any allegations in the complaint that tend to show that future unsolicited calls from the defendants are "certainly impending." Nor have I identified any. Brooks therefore lacks Article III standing to seek prospective injunctive relief, and striking the demand for injunctive relief is warranted. *See*

18

*Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2019) (dismissing claim for injunctive relief under the TCPA for lack of Article III standing).

## III.   CONCLUSION

Accordingly, the following is **ORDERED:**

1. Defendant PSCU, LLC's Motion to Dismiss and for More Definite Statement, or in the Alternative, Motion to Strike Class Allegations or Deny Class Certification (Doc. 18) is **GRANTED-IN-PART** and **DENIED-IN-PART.**

2. Defendant Lone Star Credit Union's Motion to Dismiss, or in the Alternative, Motion to Strike Class Action Allegations and Motion for More Definite Statement (Doc. 19) is **GRANTED-IN-PART** and **DENIED-IN-PART.**

3. The defendants' Joint Motion to Bifurcate Discovery (Doc. 21) is **GRANTED.**

4. Plaintiff Summer Brooks is **ORDERED** to replead her complaint to either set out each phone call as a separate TCPA count, or else specify

which phone call her lone TCPA count is premised on. Brooks must amend her complaint **no later than June 25, 2025**.

5. Plaintiff Summer Brooks's demand for injunctive relief, Compl. (Doc. 1) at 14, is **STRIKEN**.

6. No later than **June 25, 2025,** the parties must file a new case management report jointly proposing a bifurcated discovery timeline.

**ORDERED** in Tampa, Florida, on June 11, 2025.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge